# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

RICHARD W. SENAY                                                 PLAINTIFF

v.                                                CIVIL ACTION NO. 4:19-CV-P6-JHM

OFFICER GRAHAM *et al.*                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This is a *pro se* civil rights action brought by a prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff Richard W. Senay leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss some claims but allow others to proceed.

## I. SUMMARY OF COMPLAINT

Plaintiff was formerly incarcerated as a pretrial detainee at the Hopkins County Detention Center (HCDC).[1] Plaintiff names the following HCDC officials as Defendants in this action – Supervising Deputies Graham and Lampton and Deputies Griffith, Helton, and Bowers. He sues Defendants in both their official and individual capacities.

Plaintiff first alleges that on December 18, 2018, he was released from his disciplinary cell for one hour of recreation. Plaintiff states that it "is not uncommon for inmates to stay out past their hour 5 to 15 mins due to officers being busy or just common courtesy to let inmate finish up." Plaintiff states he began taking a shower four minutes before his hour was scheduled to be over. He then states that at 10:51 a.m. he was advised "that his hour was up and to get out of the shower." He states that he then advised Defendant Helton that "he was finishing up." Plaintiff states that his hour of recreation was officially over at 10:52 a.m. He then states that at

---

[1] After filing the complaint, Plaintiff filed a notice of change of address indicating he has been released from incarceration (DN 8).

10:54 a.m. Defendants Helton, Griffith, and Bowers entered the segregation unit and cut off the water to the shower. Plaintiff states that he was covered in soap at this time and cut his finger on the shower button while trying to turn the shower back on. Plaintiff states that he was then ordered to get out of the shower. He states that he "covered his groin area" before stepping out into the unit with "5 male inmates looking on, 2 female officers, and (1) male officer." He states that he was exposed to all of them naked. Plaintiff alleges that he made his way to his cell "with thick layers of soap all over his body" and that he did not use the cold water in his cell to rinse off because "he was fearful of getting sick." Plaintiff alleges that he then requested to speak to the shift commander "due to soap being left on his body and because his finger was bleeding" but that this request was denied. Plaintiff states that he then hit the red emergency button in his cell because he did not know how severe the cut on his finger was but that he was ignored. Plaintiff states that the soap eventually began to burn his skin so he had no choice but to fill a cup with cold water and attempt to wash his body. He writes, "after hours and hours, no shift commander responded and no medical treatment was given." Plaintiff writes that on the following day other inmates in the segregation unit began making rude comments like "look at that ass" and "cat-calling" and whistling and laughing about the incident. He also states that later that day a female deputy informed Plaintiff that she had viewed the video. According to Plaintiff, he asked the deputy why "2nd shift" deputies were allowed to view the video of him naked.

Plaintiff states that he filed a grievance and a "PREA" on Defendants Griffith, Helton, and Bowers regarding this incident but that his grievance was denied.

Plaintiff then alleges that on December 24, 2018, while he was using a pair of clippers, the clippers began smoking. He states that he asked Defendant Helton for another pair of

clippers. Several minutes later Defendants Graham, Helton, and Griffith came into his cell and told him was being placed in segregation for breaking the clippers. Plaintiff states that he spent two days in segregation – Christmas Eve and Christmas Day. He states that when he was released from segregation, Defendant Graham told him that he did not know if Plaintiff broke the clippers and then stated "You spent your Christmas in here so I'm good with that." Plaintiff states that he believes he was placed in segregation for two days in retaliation for filing grievance(s) related to the shower incident.

Finally, Plaintiff alleges that on January 4, 2019, officers called Plaintiff over the intercom in his cell to advise him to get ready for a visitor. He states that Defendant Lampton entered his cell no more than 45 seconds later while Plaintiff was in the process of brushing his teeth and putting on his jumpsuit. Defendant Lampton then told Plaintiff he had "30 secs or his visit would be terminated." Plaintiff states that he then "became angry and started using vulgar language at being rushed" and that Defendant Lampton then advised Plaintiff that if he heard another curse word he would not receive his visit. When Plaintiff then stated that the treatment he was receiving was "bullshit," Defendant Lampton slammed the door in Plaintiff's face and cancelled his visit. Plaintiff states that he also believes this visit was cancelled in retaliation for filing the aforementioned grievance(s).

Plaintiff claims that Defendant Graham engaged in the "deficient management of subordinates" by knowingly disregarding this treatment of Plaintiff. Plaintiff also alleges that Defendant Graham filed to train, supervise, or discipline his officers for their allegedly unconstitutional treatment of him. Finally, Plaintiff claims that Defendant Graham retaliated against him for filing the aforementioned grievance(s) when he had Plaintiff placed him in segregation for two days for allegedly breaking a pair of clippers.

As relief, Plaintiff seeks compensatory and punitive damages and injunctive relief in the form of release to probation or transfer to another facility.[2]

## II. LEGAL STANDARD

Because Plaintiff filed this action as a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 544 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979),

---

[2] The Court notes that Plaintiff's requests for injunctive relief are moot since he is no longer incarcerated.

or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Based upon his allegations, Plaintiff claims that he was subjected to cruel and unusual punishment/inhumane treatment; inadequate medical care; retaliation; violation of privacy; discrimination; and retaliation. The Court will address each of these claims in turn.

#### A. Cruel and Unusual Punishment

Plaintiff first claims that Defendants Griffith, Helton, and Bowers subjected him to "cruel and unusual punishment" by removing him from the shower without allowing him to remove the soap from his body and forcing him to eventually rinse it off with cold water in his cell.

While the Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment, it is the Due Process Clause of the Fourteenth Amendment that provides the

5

same protections to pretrial detainees. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Richko v. Wayne Cty.*, 819 F. 3d 907, 915 (6th Cir. 2016)). "The Sixth Circuit has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Id*. (quoting *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013))[3]. "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Indeed, the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

More specifically, courts have held that the temporary deprivation of hygiene needs, such as the use of a bathroom or shower, are not sufficiently grave to form the basis of an Eighth Amendment claim in the absence of physical injury or a serious risk of harm. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) ("[T]he momentary deprivation of the right to use the bathroom, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation."); *Murillo v. MacDonald*, 536 F. App'x 753, 753 (9th Cir. 2013) ("[T]he short-term deprivation of bathroom facilities, without more, is not sufficiently

---

[3] At this time, the only explicit exception in the Sixth Circuit to the general rule that rights under the Eighth Amendment are co-extensive with rights under the Fourteenth Amendment pertains to excessive-force claims brought by pretrial detainees. *Id*. at 938 n.3 (recognizing that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), abrogated the subjective intent requirement for Fourteenth Amendment excessive-force claims and that the standard which governs pretrial detainee claims may be shifting, but declining to apply the *Kingsley* standard to a pretrial detainee claim of deliberate indifference to a serious medical need). Therefore, the Court will apply the Eighth Amendment standard to the instant claims.

grave to form the basis of an Eighth Amendment violation."); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]o demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must . . . demonstrate a substantial risk of [] serious harm resulting from [his] unwilling exposure to the challenged conditions.") (citation omitted). The length of time that a prisoner is "subjected to harsh conditions" is thus "a critical factor," as conditions that "may be tolerable for a few days are intolerably cruel for weeks or months." *Smith v. Copeland*, 87 F.3d 265, 267 (8th Cir. 1996).

Here, Plaintiff alleges that although he was not allowed to wash the soap from his body and eyes while in the shower, he was able to rinse off with cold water from his cell shortly thereafter. This incident simply does not rise to the level of "cruel and unusual punishment" or "inhumane treatment." While it may have been humiliating, it was not significantly lengthy or sufficiently harmful to state a constitutional claim. Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted. *See, e.g.*, *Hartsfield v. Vidor*, 199 F.3d 305, 309-10 (6th Cir. 1999) (depriving an inmate of access to a toilet for two eight-hour periods and allowing him to sit in his own urine, "while harsh, [was] not cruel and unusual punishment"); *Shakka v. Smith*, 71 F.3d at 167-68 (preventing an inmate from "showering for three days after having human excrement thrown onto him" did not violate the Eighth Amendment where there was no evidence that he was exposed to a significant risk of harm); *Vanaman v. Robinson*, No. 18-1003 (MCA), 2018 U.S. Dist. LEXIS 31332, at *6-7 (D.N.J. Feb. 23, 2018) ("Providing only cold showers during the winter months, standing alone and without any additional adverse conditions, is not an extreme deprivation as required to make out an Eighth Amendment violation[.]") (collecting cases).

7

### B. Inadequate Medical Treatment

The Court next turns to Plaintiff's claim that he received inadequate medical treatment when he told Defendants Griffith, Helton, and Bowers that he had cut his finger in the shower and that he needed medical treatment but they ignored his request.

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. at 835 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002). A delay or even denial of medical treatment for superficial, nonserious physical conditions, however, does not constitute a constitutional violation. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896-98 (6th Cir. 2004). The seriousness of the injury must be more than *de minimis*. "In other words, injuries such as bruises, cuts and abrasions which are treatable at home and with over-the-counter bandages or medications are not sufficiently serious to invoke the protection of the constitution." *Meyers v. City of Chardon*, No. 1:14 CV 2340, 2015 U.S. Dist. LEXIS 48292, at *25-26 (N.D. Ohio Apr. 13, 2015) (citing *Blackmore v. Kalamazoo Cty.*, 390 F.3d at 896-98)

The Court finds that Plaintiff's description of his cut suggests that it was not more than a *de minimis* injury, *i.e.*, not sufficiently serious to satisfy the objective prong of the deliberate-indifference test. *See, e.g.*, *McClain v. Unknown Cage*, No. 1:16-cv-1017, 2016 U.S. Dist. LEXIS 135426, at *8 (W.D. Mich. Sept. 30, 2016) (finding that scrapes to wrists and feet do not constitute a sufficiently serious medical need); *Crowder v. Hamilton Cty. Sheriff's Office*, No. 1:11-cv-306, 2012 U.S. Dist. LEXIS 71142, at *13 (E.D. Tenn. May 22, 2012) (finding that an allegation of a cut finger, without more detail, does not constitute a serious medical need).

Thus, the Court will also dismiss this claim for failure to state a claim upon which relief may be granted.

### C. Retaliation

Plaintiff also claims that he was retaliated against on two occasions for filing grievance(s) related to the above incidents. The Court will analyze each of these claims in turn.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Under the *Thaddeus-X* framework, the filing of a prison grievance is generally constitutionally-protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

#### 1. Defendant Lampton

Plaintiff claims that Defendant Lampton retaliated against him for filing grievance(s) by terminating a visit he was scheduled to have. The third element of a retaliation claim requires a plaintiff to prove that the exercise of a protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). It is well-recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). However, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)). In addition, the Sixth Circuit has held that, "[w]ithout more, []

conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004).

Although Plaintiff alleges that Defendant Lampton cancelled his visit after he filed grievance(s) related to the shower incident, he does not allege that Defendant Lampton knew that he had filed these grievance(s). Moreover, although Plaintiff claims that the cancelled visit had to be retaliatory because he did not violate any prison rule or procedure to justify the cancellation, Plaintiff admits that he was cursing at Defendant Lampton regarding being rushed to see his visitor and that Defendant Lampton warned Plaintiff that if he heard another curse word he would not allow his visit. Plaintiff states that he then said the treatment he was receiving from Defendant Lampton was "bullshit" and that it was only then that Defendant Lampton cancelled the visit. Thus, Plaintiff's own allegations suggest that Defendant Lampton cancelled the visit because Plaintiff disobeyed his direct order and not in retaliation for filing grievance(s).

Thus, the Court will dismiss Plaintiff's retaliation claim against Defendant Lampton for failure to state a claim upon which relief may be granted.

**2. Defendants Graham, Helton, and Griffith**

Plaintiff also claims that Defendants Graham, Helton, and Griffith retaliated against him for filing grievance(s) against them by placing him in disciplinary segregation on Christmas Eve and Christmas Day based upon the fabricated charge that he destroyed a pair of clippers. Plaintiff specifically alleges that when Defendant Graham told Plaintiff he was being released from segregation, he also told Plaintiff that he did not know who broke the clippers and stated, "But you spent your Christmas in here so I'm [] good with that." **Based upon these allegations,**

**the Court will allow First Amendment retaliation claims to proceed against Defendants Graham, Helton, and Griffith in their individual capacities.**

### D. Other Claims

Plaintiff also alleges that he was "sexually exploited" by Defendants Griffith, Helton, and Bowers when he was forced to "exit the shower in the seg. unit with threats of force and exposed naked to (2) female officers and (1) male officer along with 5 other inmates housed in the seg. unit." He claims that other inmates began "cat-calling" him after this incident and that a deputy on duty the next day told him she had seen video of the incident. Based on these allegations, **the Court will allow individual-capacity claims to proceed against Defendants Griffith, Helton, and Bowers for a violation of Plaintiff's right to privacy under the Fourth Amendment.**

Plaintiff also claims that he was discriminated against when he was forced to leave the shower two minutes after his one hour of recreation was over because Defendants Griffith, Helton, and Bowers allowed another inmate to stay out "15 mins past his hour" on the same day. Based on this allegation, **the Court will allow individual-capacity claims to proceed against Defendants Griffith, Helton, and Bowers for a violation of the Equal Protection Clause of the Fourteenth Amendment.**

**The Court will also allow a claim based upon Defendant Graham's alleged failure to supervise, train, and/or control Defendants Griffith, Helton, and Bowers with regard to the above incidents to proceed against Defendant Graham in both his official and individual capacities.**

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's claim of retaliation against Defendant Lampton and his claims of cruel and unusual punishment and

11

inadequate medical care are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Because there are no remaining claims against him, the **Clerk of Court** is **DIRECTED to terminate Defendant Lampton as a party to this action.**

The Court will enter a separate Service and Referral Order to govern the claims it has allowed to proceed.

The Court passes no judgment on the merit of the continuing claims or upon the ultimate outcome of this action.

Date: June 28, 2019

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants
Hopkins County Attorney
4414.011